Johnson, C. J. The administrator of Burton interposed in the probate court three several objections against the claim of Lock-ert; First: “That the alleged promise of Burton was contingent, depending upon the finding of the negroes, and also upon his success in the suit; and that upon the trial of the case he only recovered a portion of the negroes in controversy, and that in any event, the allowance to Lockert should be only pro rata; Second: That the alleged promise could not be enforced, because the claimant had suffered more than two years to elapse since the grant of administration on the estate of Burton, without presenting his claim or giving any notice of it as required by law, and that consequently the same was barred: and, Thirdly: That on the 6th of October, A. D. 1842, Lockert was, by the decree of the district court of the United States in bankruptcy, for the District of Ai’kansas, finally decreed and finally discharged of and from all his debts owing by him at the time of the presentation of his petition, on the thirty-first day of March, A. D. 1842, to be declared a bankrupt, that the said claim was or ought to have been embraced in the schedule of his assets to be distributed among his creditors, and that during the course of the administration of his assets in bankruptcy did not, nor had he in any manner since become the lawful owner of the claim, and that consequently he had no right to demand the amount from the estate.” These are all the objections urged against the allowance of the claim, and in case that either is well founded in law, it is clear that the judgment is erroneous, and consequently ought to be reversed. It appears, from the testimony, that William C. Walker had instituted a suit in the Saline circuit court against George Moody for a family of negroes, that Alexander Burton, whose estate is sought to be subjected to the claim in question, after having purchased Walker’s interest in the suit, made a contract with Lockert, and agreed that if he would assist him in getting the negroes, which had been run off by Moody, and in case he should succeed in the suit, he would pay Lockert for his services two hundred and fifty dollars. We think that, upon a fair construction of the contract, it would not be material as to the amount of the recovery, in order to fix the liability of Burton for the sum stipulated. He had purchased the interest of Walker, and the only contingency, upon which Lockert’s claim was made to depend, was the recovering such interest. This view of the agreement is fortified by the fact that Lockert’s service could neither be increased nor diminished by the amount of Burton’s recovery. We think, therefore, that Burton’s liability was not made to depend upon the fact whether he recovered six-elevenths or the whole of the property in controversy, but that it became fixed upon the recovery of Walker’s interest in the subject matter of the suit. The second objection involves the construction of the statute prescribing and limiting the time within which claims are required to be presented against the estates of deceased persons. It is declared, by the last clause of the eighty-fifth section of chapter four, of the Digest, that “ all demands not exhibited to the executor or administrator, as required by this act, before the end of two years from the granting of letters, shall be forever barred.” This statute cannot be considered as any thing else than an act of limitations, and, if so, can operate only upon rights of action actually subsisting. Acts of limitation operate alone upon the remedy, and it would be flatly absurd to say that the remedy is destroyed before the right of action had accrued, and consequently before the remedy existed. To give the act in question such a construction as to bar an action upon a contract that only created an inchoate right and before any right of action had actually accrued, would be to place it in the power of the legislature to pass a law, not merely to impair the obligation of a contract, but actually to destroy the contract itself. The form of the affidavit required of all persons presenting claims against an estate is conclusive, to show that the law only contemplated such demands as had fallen due and were actually owing at the time of their presentation. The right of action had not only not arisen upon the contract in question, but on the contrary, the contingency upon which the debt was made to depend, had not happened at the expiration of the two years alter the date of the letters of administration. It is not to be presumed that the legislature intended to deprive all persons of their claims against the estate of deceased debtors, in cases where their right of action had not arisen; and even if such had been the design, it could not have succeeded without a plain and manifest violation of the constitution of the United States. The third and last objection is, that, inasmuch as Lockert had obtained Ms final discharge under the bankrupt act, and that the contract in question had been made before he filed his petition for the benefit of that act, therefore he had no legal right to commence and prosecute the suit. It appeared, from the schedule of his effects, that the claim now sought to be enforced was not included. The administrator contends that, notwithstanding the omission of the claim in the schedule, the legal title, upon the rendition of the decree of bankruptcy, ipso facto, passed to and vested in the assignee, and that, from that instant, the bankrupt lost all control over it. The third section of the act declares that, “the assignee, in virtue of the decree of bankruptcy, shall become invested with all the property and rights of property of the bankrupt, and shall be vested with all the rights, titles, powers and authorities to sell, manage, and dispose of the same, and to sue for and defend the same, subject to the orders and directions of such court, as fully to all intents and purposes as if the same were vested in, or might be exercised by such bankrupt, before or at the time of his bankruptcy declared as aforesaid, and all suits at law or in equity then pending, in which such bankrupt is a party, may be prosecuted and defended by such assignee to its final conclusion, in the same way and with the same effect as they might have been by such bankrupt.” It is clear that the circumstance of the failure of the bankrupt to insert any part of his effects in his schedule, cannot in any degree affect the title of the assignee. He does not depend upon the schedule for his title, for the law by its own mere force and operation passes the title to all his effects of whatsoever character or description to the assignee, and vests it in him for the benefit of the creditors of the bankrupt. The only doubt that could by possibility arise in relation to the matter is, whether it is such a right of property as, in the nature of things, could pass to and vest in the assignee. True it is, that, at the date of his petition, it had not matured into a debt, as the contingency, upon which it was made to depend, might or might not happen; yet we conceive, to say the least of it, it was an inchoate right and such as in the spirit and under the proliey of! the bankrupt act was transferable to the assignee, and could be enforced by him when the contingency had happened which fixed the liability. We think it clear, that the ground of the last objection is fully tenable, and that for the error in overruling it aloné, if there were no others, the judgment of the court below ought to be reversed. The judgment of the circuit court of Pulaski county herein rendered, is therefore reversed, and the case remanded to be proceeded in according to law and not inconsistent with this opinion.